**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

MIGUEL LORENZO, et al., :
: Civil Action No. 11-1566 (ES)
Plaintiffs, :
:
v. : O P I N I O N
:
LT. JONES, et al., :
:
Defendants. :

---

APPEARANCES:

Miguel Lorenzo, Plaintiff pro se
# 079
Special Treatment Unit
P.O. Box 905
Avenel, New Jersey 07001

Hakim Evans, Plaintiff pro se
Special Treatment Unit
P.O. Box 905
Avenel, New Jersey 07001

George Neely, Plaintiff pro se
Special Treatment Unit
P.O. Box 905
Avenel, New Jersey 07001

**SALAS, District Judge**

Plaintiffs, Miguel Lorenzo, Hakim Evans and George Neely, involuntarily committed persons pursuant to the Sexually Violent Predator Act ("SVPA"), N.J.S.A. 30:4-27.24, et seq., seek to bring this action in forma pauperis. Based on their affidavits of indigence, the Court will grant Plaintiffs' applications to proceed

in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the complaint.

At this time, the Court must review the complaint, pursuant to 28 U.S.C. § 1915(e)(2), to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the complaint should be dismissed without prejudice at this time.

**I. BACKGROUND**

Plaintiffs, Miguel Lorenzo, Hakim Evans and George Neely ("Plaintiffs"), bring this civil rights action, pursuant to 42 U.S.C. § 1983, against the following defendants: Lieutenant Jones, Special Treatment Unit ("STU"); New Jersey Department of Corrections; Gary M. Lanigan, Commissioner of the Department of Corrections; Ms. Yatauro, Administrator at the STU; and Dr. Merrell Maine, Director of Psychology at the STU. The following factual allegations are taken from the complaint, and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of plaintiffs' allegations.

Plaintiff Lorenzo alleges that on November 27, 2010, he received a visit at approximately 1:00 pm to the STU. At approximately 3:00 pm, at the end of the visit, Plaintiff and the other residents in the room were ordered by Lt. Jones to line-up

against the wall with their hands up. They were informed that if anyone moved, it would be considered an act of aggression and would be dealt with accordingly. Plaintiff Lorenzo was taken into a room and told to take off his clothes. He was told to "bend over so the officers could look up [his] anus...[and] to hold up [his] testicles, so that the officer could look under them." Plaintiff Lorenzo complied with the officer's orders.

Plaintiff Evans alleges that on November 27, 2010, he received a visit at approximately 1:00 pm to the STU. At 3:15 pm, at the end of the visit, Plaintiff and the other residents in the room were ordered by Lt. Jones to stand against the wall with their hands in the air. He stood there for 10 or 15 minutes and then was told to go into a room and strip. He took off all his clothes and was ordered to turn around and bend over. He was then ordered to turn back around and lift up his testicles. He complied with all orders. He states that he felt humiliated and had never been strip searched at the STU before.

Plaintiff George Neely alleges that on November 27, 2010, he received a visit at approximately 1:00 pm to the STU. At the conclusion of the visit, Plaintiff and the other residents in the room were ordered by Lt. Jones and other officers to line up against the wall, with their hands against it and that any act against the instructions would be considered an act of aggression and would be dealt with as such. He alleges that he was taken

into a room and ordered to strip down. He took off all his clothes and was ordered to lift up his testicles. He was further ordered to turn around and spread his cheeks. He complied with all orders. He alleges that this was the first time he had been strip searched while at the STU.

Plaintiffs are seeking to be certified as a class. They allege that the above-referenced events were in violation of their Fourth Amendment rights; their rights under the Fourteenth Amendment; their state statutory rights under New Jersey's Rights of Patient Act, N.J.S.A. 30:4-24.2; their state statutory rights pursuant to N.J.A.C. 10A: 35-2.1 & 2.3; and their First Amendment right to privacy.[1]

Plaintiffs request that the Court grant the following relief: (1) declare that the acts, omissions, policies and practices of the Defendants violated 42 U.S.C. 1983, the First, Fourth and Fourteenth Amendments to the Constitution, the right to privacy under the First Amendment, the search and seizure clause of the Fourth Amendment, New Jersey's Rights of Patients Act (N.J.S.A. 30:4-24.2) and New Jersey's Civil Rights Act; (2) enjoin Defendants from continuing the unconstitutional and illegal acts described in the complaint; (3) order Defendants to stop visual cavity searches and/or any strip search without reasonable suspicion; (4) monetary

---

[1] Though Plaintiffs claim a violation of their right to privacy under the First Amendment, it appears from the facts stated in support of their claim that it is more properly considered as an alleged violation of their Fourth Amendment rights.

damages for the harm Plaintiffs have suffered; (5) attorneys' fees; (6) and any such other relief that the Court deems proper.

## II. DISCUSSION

### A. Legal Standard

**1. Standards for a Sua Sponte Dismissal**

The Prison Litigation Reform Act, Pub.L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2)(B).  This action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) because Plaintiffs are proceeding as an indigents.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)); see also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).

The Supreme Court refined the standard for summary dismissal of a complaint that fails to state a claim in <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009). The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2). Citing its opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" <u>Iqbal</u>, 129 S.Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 555), the Supreme Court held that, to prevent a summary dismissal, a civil complaint must now allege "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>See id.</u> at 1948. The Supreme Court's ruling in <u>Iqbal</u> emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible. <u>See id.</u> at 1949-50; <u>see also</u> <u>Twombly</u>, 505 U.S. at 555, & n. 3; <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203 (3d Cir. 2009).

2. **Section 1983 Actions**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory

> ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

**3. The New Jersey Sexually Violent Predator Act**

The New Jersey Sexually Violent Predator Act, N.J.S.A. 30:4-27.24 et seq. ("SVPA"), provides for the custody, care and treatment of involuntarily committed persons who are deemed to be sexually violent predators. N.J.S.A. 30:4-27.26. The New Jersey Department of Corrections operates the facilities designated for SVPs, N.J.S.A. 30:4-27.34(a); and the New Jersey Department of Human Services provides for their treatment. N.J.S.A. 30:4-27.34(b).

In passing the SVPA, the New Jersey Legislature made specific findings regarding SVPs. N.J.S.A. 30:4-27.25. The Legislature noted that it was necessary to modify the previous civil commitment framework and additionally separate SVPs from other persons who have been civilly committed. Id. The SVPA defines an SVP as:

> ... a person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial, and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.

N.J.S.A. 30:4-27.26(b).

Those individuals committed under the SVPA receive annual review hearings. N.J.S.A. 30:4-27.35. An SVP may be released from involuntary civil commitment upon recommendation of the Department of Human Services or by the SVP's own petition for discharge. N.J.S.A. 30:4-27.36.

**B. Analysis**

**1. Unlawful Search Claim**

Plaintiffs allege that they were strip searched on November 27, 2010, at the conclusion of the afternoon visiting period. They assert that as civilly committed persons, such searches are unconstitutional and violate their rights under the Fourth and Fourteenth Amendments.

Recently, courts in this district have examined the same November 27th strip searches that are at issue in this case. See Belton v. Singer, 2011 WL 2690595, No. 10-6462 (SDW), at *8 (D.N.J. July 08, 2011); Graham v. Sharp, 2011 WL 2491347, 10-5563 (SRC), at *9 (D.N.J. June 20, 2011); see also Graham v. Main, No. 10-5027 (SRC) 2011 WL 2412998 (D.N.J. June 09, 2011). In concluding that

the unlawful search claims would be dismissed, those courts held that the Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. CONST. amend. IV. Reasonableness under the Fourth Amendment "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." Skinner v. Ry. Labor Executives' Ass'n, 489 U.S. 602, 618 (1988) (quoting United States v. Montoya de Hernandez, 473 U.S. 531, 537 (1985)). "Thus, the permissibility of a particular practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." Id. at 619 (quotation marks and internal citation omitted).

In Hudson v. Palmer, 468 U.S. 517, 530 (1984), a prisoner argued that a cell search conducted to harass him was unreasonable because a prisoner has a reasonable expectation of privacy not to have his cell, locker, personal effects, person invaded for such a purpose. Id. at 529. The Supreme Court rejected the claim because "prisoners have no legitimate expectation of privacy." Id. at 530. The Court observed that:

> A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order.... [S]ociety would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in

> institutional security.... [I]t is accepted by our society that loss of freedom of choice and privacy are inherent incidents of confinement.

Id. at 527-28 (footnotes, citations and internal quotation marks omitted). The same conclusion was reached with respect to pretrial detainees. See Bell v. Wolfish, 441 U.S. 520, 558-560 (1979) (finding that body cavity searches of pretrial detainees do not violate the Fourth Amendment).

In Bell v. Wolfish, the United States Supreme Court, in determining the constitutionality of post-visitation body cavity searches, held that a reasonableness test should be employed when examining the constitutionality of a search that encroaches upon the personal privacy of an inmate and the integrity of the inmate's body. In other words, courts must balance the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. 441 U.S. 520, 559 (1979); see also Turner v. Safley, 482 U.S. 78 (1987) (a prison regulation which infringes upon an inmate's constitutionally recognized right is valid only if it is reasonably related to a legitimate penological interest); Brown v. Blaine, 185 Fed. Appx. 166 (3d Cir. June 16, 2006)(three strip searches alleged to be unsanitary, demeaning and humiliating held to be constitutional); Del Raine v. Williford, 32 F.3d 1024, 1038-41 (7th

Cir. 1994)(rejecting claim that rectal probe performed in lobby area of prison hospital was "unnecessarily brutal, painful, and humiliating"); Michenfelder v. Sumner, 860 F.2d 328, 332-34 (9th Cir. 1988)(upholding policy of conducting visual body cavity searches every time prisoner leaves or returns to maximum security unit or moves within unit).

Involuntarily committed patients and SVPs, like pretrial detainees, are entitled to some protection under the Fourth Amendment, but they do not have an expectation of privacy equal to an individual in society generally. See Serna v. Goodno, 567 F.3d 944, 948 (8th Cir. 2009) (noting that pretrial detainees are kept in custody because there is cause to believe they are dangerous; similarly, commitment under Minnesota law as a sexually dangerous person requires a finding of dangerousness); Allison v. Snyder, 332 F.3d 1076-79 (7th Cir. 2003) (SVPs may be subjected to conditions that advance goals such as preventing escape and assuring the safety of others, even though they may not technically be "punished"); Aiken v. Nixon, 236 F.Supp.2d 211, 233 (N.D.N.Y. 2002), aff'd 80 Fed. Appx. 146 (2d Cir. 2003); see also, Jennings v. New York State Office of Mental Health, 786 F.Supp. 376, 382, 384 (S.D.N.Y. 1992), aff'd, 977 F.2d 731 (2d Cir. 1992); Belton, 2011 WL 2690595 at *8. The reasonableness of a particular search or seizure is determined by reference to the detention context and

is a fact-intensive inquiry. Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004).

Here, Plaintiffs allege that it was a violation of their constitutional rights to conduct a strip search without reasonable suspicion. Applying the balancing test employed by Wolfish, this Court finds, as did the Court in Belton and Graham, that a strip search conducted on residents upon returning from a visit is plainly reasonable and does not violate Plaintiffs' Fourth Amendment rights. See Semler v. Ludeman, 2010 WL 145275, at *19 (D. Minn. Jan. 8, 2010) (finding no Fourth Amendment violation where plaintiffs were required to submit to pat searches following gym use and kitchen work assignments; search was "not highly intrusive" and was "not unlike the scope of searches of the general public at airport security checkpoints"); see also Serna, 567 F.3d at 955-56 (upholding reasonableness of a facility-wide visual body cavity search after contraband was found, because, while invasive, the searches were conducted privately, safely, and professionally, and the facility was reacting to a recurring problem involving contraband cell phones).

Plaintiffs do not allege that the guards conducted the single strip search of each Plaintiff in a degrading manner. Plaintiffs do not allege that there was physical force used or that the search was done in a menacing manner. See Kitchens v. Mims, 2010 WL 1240980 (E.D.Cal. March 25, 2010). There is no allegation or

evidence to show that the strip search was conducted solely for punitive purposes. Rather, it is evident that the search was conducted as a security measure after Plaintiffs had returned from a visit where they had contact with visitors from outside the facility. The search was conducted in a separate room, with no other individuals present. See Belton, 2011 WL 2690595 at *8; Graham, 2011 WL 2491347 at *9.

Therefore, based on all of these factors, this Court will dismiss Plaintiffs' Fourth Amendment unlawful search claims, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a cognizable claim under § 1983.[2] However, this dismissal is without prejudice to Plaintiffs seeking to re-open their case with an amended Complaint alleging additional facts to support an unlawful search claim.

## 2. State Law Claims

Pursuant to 28 U.S.C. § 1367(c)(3), where a district court has dismissed all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over a related state law claim. The Court of Appeals for the Third Circuit has held that, where all federal claims are dismissed before trial,

---

[2] To the extent Plaintiffs intended for their Second Cause of Action to be construed as one for failure to train, that claim must also be dismissed, as the Court has determined that the strip searches, as alleged, were not unconstitutional. Brown v. Commonwealth of Pennsylvania, Dept. of Health Emergency Medical Services Training Institute, 318 F.3d 473 (3d Cir. 2003). ("There has been no constitutional harm alleged. Hence, there is no municipal liability under § 1983.")

"the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." <u>Hedges v. Musco</u>, 204 F.3d 109, 123 (3d Cir. 2000) (citations omitted). As no such extraordinary circumstances appear to be present here, this Court will dismiss without prejudice any state law claims that may be construed from the Complaint.

3. **Class Certification**

Since the Complaint is being dismissed on the merits, this Court will deny Plaintiffs' motion for class certification as moot.

III. **CONCLUSION**

For the reasons set forth above, Plaintiff's Complaint will be dismissed without prejudice, in its entirety as against all named defendants, for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). An appropriate order follows.

DATED: 9/9/11

ESTHER SALAS
UNITED STATES DISTRICT JUDGE